In re Wayne E. BELL, Jr., Debtor.

Wayne E. Bell, Jr., Appellant,

v.

Deborah Bell, Appellee.

Docket No. 98–5047.

United States Court of Appeals, Second Circuit.

Argued: April 1, 1999

Decided: Sept. 20, 2000

Peter H. Banse, Banse & Banse, P.C., Manchester, VT, for Appellant.

James O'Neill (John R. Canney III, on the brief), John R. Canney III, P.C., Rutland, VT, for Appellee.

Before: LEVAL and SACK, Circuit Judges, and MORAN, District Judge.*

LEVAL, Circuit Judge:

This appeal raises the question whether the conversion of a bankruptcy case from Chapter 11 to Chapter 7 triggers a new period for filing objections to property claimed as exempt during the Chapter 11 proceeding. We hold that it does not.

---

* The Honorable James B. Moran, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

This is a question of first impression in the Courts of Appeals.[1]

Wayne E. Bell, Jr. (the debtor) appeals from the judgment of the United States District Court for the District of Vermont (J. Garvan Murtha, *C.J.*) affirming an order of the United States Bankruptcy Court for the District of Vermont (Francis G. Conrad, *Bankr.J.*). On conversion of the debtor's case from Chapter 11 to Chapter 7, the Chapter 7 trustee filed an objection to certain assets previously claimed as exempt by the debtor, on the ground that, in claiming the exemption, the debtor had undervalued them. The bankruptcy court sustained the trustee's objection, rejecting debtor's argument that, because the objection was not filed within 30 days after the conclusion of the meeting of creditors in the Chapter 11 proceeding, it was untimely under Fed. R. Bankr.P. 4003(b). On review, the district court affirmed the bankruptcy court's order, holding that the conversion of a case from Chapter 11 to Chapter 7 triggers a new period for objections to exemptions, running from the conclusion of the post-conversion meeting of creditors. We disagree.

Because the Rules require not only that objections be filed within 30 days of the conclusion of the meeting of creditors, *see* Rule 4003(b); 11 U.S.C. § 522(*l*), but also that the meeting of creditors itself be convened within 40 days of the order for relief, *see* 11 U.S.C. § 341; Rule 4003(b), Rule 2003(a), and because conversion does not change the date of the order for relief, *see* 11 U.S.C. § 348(a), we conclude that conversion does not reset the limitations period for filing objections to a debtor's claimed exemptions. A new period for objections furthermore would be incompatible with the debtor's substantive property rights in property timely exempted under 11 U.S.C. § 522(*l*). We, therefore, hold that the conversion of a case from Chapter 11 to Chapter 7 does not initiate a new period for objections to exemptions claimed during the Chapter 11 proceeding.[2]

Applying this rule of law to the undisputed facts of this case we conclude: (1) the last date for timely objection to debtor's claimed exemptions was June 13, 1997; (2) the Chapter 7 trustee's objection to debtor's exemption, filed on November 19, 1997, was untimely; (3) as of June 14, 1997, by operation of 11 U.S.C. § 522(*l*), the property claimed as exempt was exempt; (4) therefore, it no longer formed part of the 11 U.S.C. § 541 estate and had revested in the debtor, free of claims.

Accordingly, we vacate the district court's judgment and remand.

## I. BACKGROUND

### A. The Facts and Proceedings Below

The facts are straightforward and not in dispute. On June 13, 1996, Wayne E. Bell, Jr. (the debtor) filed a petition for bankruptcy under Chapter 11. The debtor elected to take his state law exemptions pursuant to 11 U.S.C. § 522(b)(2). Among the assets that he claimed as exempt on his Schedule C filing were 490 shares in Rockwell's Quality, Inc. ("Rockwell's"), a closely-held Vermont corporation, of which

---

1. We note that the Bankruptcy Appellate Panel for the Eighth Circuit has recently held that where a case was converted from Chapter 13 to Chapter 7, the Chapter 7 trustee had a new 30 day period to object to debtor's claimed exemptions. *See Alexander v. Jensen-Carter (In re Alexander),* 239 B.R. 911 (8th Cir. BAP 1999). Quite apart from the differences between a Chapter 13 to Chapter 7 and a Chapter 11 to Chapter 7 conversion, we find that case factually distinct in that an objection to the exemption had been timely raised in the Chapter 13 proceeding and previously sustained by the bankruptcy court. We underscore that our ruling applies only to conversions from Chapter 11 to Chapter 7. *See* note 18, *infra,* and accompanying text.

2. Leading bankruptcy commentators support this holding. *See 9 Collier on Bankruptcy* ¶ 4003.03[1], at 4003–8 (Lawrence P. King ed., 15th ed. rev.1999); 2 William L. Norton, Jr., *Norton·Bankruptcy Law & Practice 2d* § 46:33 n. 9 (Supp.2000).

he is the principal officer and director, and which operates a small restaurant in Manchester, Vermont, known as The Quality. The debtor valued these shares at $490 and claimed the whole $490 as exempt under Vermont's catchall exemption. *See* Vt. Stat. Ann. tit. 12, § 2740(7).[3]

On August 12, 1996, the United States trustee convened a meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "Original Meeting"). The representative of the United States trustee examined the debtor and the meeting was then adjourned to November 6, 1996. The meeting was never reconvened but on May 14, 1997, when the debtor filed his Plan and Disclosure Statement the clerk entered on the docket sheet the notation "Terminate Deadline Re: First Meeting."[4] It is undisputed that no objection was raised to the exemptions claimed by the debtor during these Chapter 11 proceedings.

On September 24, 1997, the case was converted to a Chapter 7 proceeding, pursuant to 11 U.S.C. § 1112(b), and an interim Chapter 7 trustee was appointed, pursuant to 11 U.S.C. § 701. On October 16, 1997, another meeting of creditors was convened (the "Post–Conversion Meeting"). This meeting was adjourned to November 13, 1997.

On November 19, 1997—that is, 189 days after the conclusion of the Original Meeting—the Chapter 7 trustee filed an objection to the debtor's claimed exemption of the 490 shares of Rockwell's stock on the ground that the debtor had underestimated their value. At a hearing on January 6, 1998, the bankruptcy court sustained the trustee's objection to the exemption; the court rejected the debtor's argument that, because the objection had not been filed within thirty days of the Original Meeting of creditors, it was untimely.[5] The bankruptcy court entered a written order to this effect on January 26, 1998. On review, the district court affirmed the bankruptcy court, holding that when a bankruptcy proceeding is converted from a Chapter 11 proceeding to a Chapter 7 proceeding, a new thirty-day objection period begins to run from the conclusion of the post-conversion meeting of creditors. *See Bell v. Obuchowski (In re Bell)*, No. 1:98CV111, slip op. at 3 (D. Vt. June 8, 1998). Debtor appealed.[6]

### B. Relevant Law

When an individual debtor petitions for bankruptcy he is entitled to claim certain property as exempt from the estate. *See* 11 U.S.C. § 522(b) (allowing debtor to elect to take exemptions provid-

---

3. Vt. Stat. Ann. tit. 12, § 2740(7) provides an exemption for "the debtor's aggregate interest in any property, not to exceed $400.00 in value, plus up to $7,000.00 of any unused amount of [certain other specified exemptions]."

4. It is settled law that a bankruptcy court has the authority to conclude an indefinitely adjourned meeting. *See, e.g., In re Havanec*, 175 B.R. 920, 922–23 (Bankr.N.D.Ohio 1994). In any event, neither party argues that the Original Meeting was not "concluded" for purposes of commencing the 30–day objection period under Fed R.Bankr.P. 4003(b). We therefore do not address this issue, and treat the meeting as properly concluded. *See* Fed. R.App. P. 28(a)(8)-(9), 28(b); *LoSacco·v. City of Middletown*, 71 F.3d 88, 92 (2d Cir.1995).

5. Neither party having argued on appeal that the trustee's objection should be treated dif-

ferently because it was directed only at the value of the exemption, we do not address that issue, on which commentators appear split. *Compare* 9 *Collier on Bankruptcy* ¶ 4003.03[3], at 4003–12 ("[T]he debtor's valuation of the property for exemption purposes must be accepted once the deadline for objections has passed. Otherwise, that deadline would be meaningless.") *with* 1 Robert E. Ginsberg & Robert D. Martin, *Ginsberg and Martin on Bankruptcy* § 6.01[F], at 6–18 (4th ed. 1998 Supp.) ("An objection to the valuation of debtor's property claimed as exempt differs from an objection to an exemption and need not be raised within 30 days of the 341 meeting.").

6. During the pendency of this appeal the Chapter 7 trustee sold all of its interest in the 490 shares of stock to Deborah Bell, the appellant's former wife, who was substituted as the appellee on November 2, 1998.

ed by state or federal law); *id.* § 522(*l*) (requiring debtor to file list of property claimed as exempt); Fed. R. Bankr.P. 4003(a). Any creditor and the bankruptcy trustee may file objections to the debtor's list of property claimed as exempt. *See* Fed. R. Bankr.P. 4003(b).[7] However, absent special circumstances, these objections must be filed "within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a)." *Id.* If no objections are made, then "the property claimed as exempt ... is exempt." 11 U.S.C. § 522(*l*).

■■■ The Bankruptcy Code provides that "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a). Rule 2003(a) of the Rules of Bankruptcy Procedure requires "a meeting of creditors to be held no fewer than 20 and no more than 40 days after the order for relief." The commencement of a voluntary case under Chapter 11 constitutes an order for relief. *See* 11 U.S.C. § 301. The conversion of a case initially brought under one chapter of the Bankruptcy Code to a case under another chapter also constitutes "an order for relief under the chapter to which the case is converted," but generally "does not effect a change in the date of ... the order for relief." 11 U.S.C. § 348(a).

■■■ On conversion, the Bankruptcy Rules expressly provide that a new time period shall commence for the filing of claims, pursuant to Fed. R. Bankr.P. 3002, for the filing of a complaint objecting to discharge, pursuant to Fed. R. Bankr.P. 4004, and for the filing of a complaint to obtain a determination of dischargeability, pursuant to Fed. R. Bankr.P. 4007. *See* Fed. R. Bankr.P. 1019(2). However, Rule 1019(2) includes no reference to a new

period for the filing of objections to a debtor's claimed exemptions, pursuant to Fed. R. Bankr.P. 4003(b).

## II. DISCUSSION

### A. Standard of Review

■■■ In an appeal from a district court's review of a bankruptcy court ruling, our review of the bankruptcy court is independent and plenary. *See FCC v. NextWave Personal Communications, Inc. (In re NextWave Personal Communications, Inc.),* 200 F.3d 43, 50 (2d Cir.1999) (per curiam). We accept its factual findings unless clearly erroneous, but review its conclusions of law de novo. *See id.*

### B. Analysis

The debtor argues that the plain meaning of 11 U.S.C. § 522(*l*) read together with Rule 4003(b) controls the outcome of this case: unless timely objections are filed, property claimed as exempt is exempt. Here, there is no dispute that (1) no objections were filed within 30 days of the Original Meeting of creditors and (2) no extension of that time limit was sought or obtained. *See* Fed R. Bankr.P. 4003(b). Therefore, he argues the property was exempt. *See* 11 U.S.C. § 522(*l*).

■■■ If the case had been in Chapter 7 or Chapter 11 since its inception and had involved no conversion, this argument would be unassailable. The Bankruptcy Rules expressly limit a bankruptcy court from extending the time period for objections, except as provided in Rule 4003(b) itself. *See* Fed. R. Bankr.P. 9006(b)(3) ("The court may enlarge the time for taking action under Rule[ ] ... 4003(b) ... only to the extent and under the conditions stated in [that] rule[ ]."). By its terms Rule 4003(b) allows an extension of the time period for filing objections only if the

---

7. In pertinent part, Rule 4003(b) reads:
 The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to

 Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court.

extension is granted within the thirty-day period itself.[8] In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Supreme Court interpreted 11 U.S.C. § 522(*l*) and Rule 4003(b) strictly, holding that a Chapter 7 trustee could not contest the validity of a claimed exemption once the thirty-day period for objections had run and no extension had been obtained within that period, notwithstanding that the debtor had no colorable basis for claiming the exemption. The Supreme Court opined: "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor*, 503 U.S. at 644, 112 S.Ct. 1644. Were this a simple Chapter 7 case, therefore, the trustee's objections would be barred as untimely under the Bankruptcy Rules themselves and binding precedent.

However, the appellee and the dissent argue that conversion from Chapter 11 to Chapter 7 produces a different result. *See* Appellee Br. at 6–9. Because *Taylor* did not concern a conversion between two chapters of the Bankruptcy Code, they argue that its holding does not compel any particular result in this case. *See* dis. op. *post* at 222 & n. 1; *see also In re de Kleinman*, 172 B.R. 764, 768 (Bankr. S.D.N.Y.1994) ("The *Taylor* case, however, did not address the effect of a conversion ... and the holding in *Taylor* does not dictate the outcome of [this case]."); *In re Havanec*, 175 B.R. 920, 923 (Bankr. N.D.Ohio 1994) (*Taylor* "does not purport

to determine" which meeting of creditors determines the period for objections in a conversion case). While we concede that *Taylor* does not directly control this case, both it and the strictures of Rule 9006 counsel that "courts should be wary of modifying the operation of Rule 4003(b) for policy reasons they deem expedient." *In re Brown*, 178 B.R. 722, 725 (Bankr. E.D.Tenn.1995).

Appellee contends that conversion gives rise to a new period for objections. Textually, the argument for a new period for objections begins with Fed R. Bankr.P. 4003(b), which provides that objections may be filed "within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a)." In turn, Fed. R. Bankr.P.2003(a) requires that a meeting of creditors "shall ... be held no fewer than 20 and no more than 40 days after the order for relief." *See also* 11 U.S.C. § 341(a) (providing that United States trustee shall convene a meeting of creditors "[w]ithin a reasonable time after the order for relief"). The conversion of a case from Chapter 11 to Chapter 7 "constitutes an order for relief." 11 U.S.C. § 348(a). Appellee, therefore, argues that (1) because the conversion is an "order for relief," it requires the convening of a new meeting of creditors, and (2) because the time period for objections is counted from the conclusion of the meeting of creditors, the text of the Bankruptcy Code and Rules plainly requires a new time period for objections when a case converts. Put sim-

---

**8.** Writing for the majority, Justice Thomas in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), did not discuss Rule 9006(b)(3). In expressly and narrowly limiting the power of courts to extend the period for filing objections, the rule provides an "identifiable reason" precluding the equitable arguments advanced by Justice Stevens in dissent. *See id.* at 647, 112 S.Ct. 1644 (Stevens, J., dissenting) ("[T]here is no identifiable reason why ordinary tolling principles that apply in other contexts should not also apply in bankruptcy proceedings...."). *Cf. Zidell, Inc. v. Forsch (In re Alaska Coastal Lines, Inc.)*, 920 F.2d 1428 (9th Cir.1990) (no equitable power exists to depart from the

mandate of Rule 9006(b)(3)). Further, circuit courts have uniformly construed strictly the power of courts under Rule 4003(b) to extend the deadline within the 30–day period: motions for the extension must be *granted*, not merely *filed*, within the period. *See Clark v. Brayshaw (In re Brayshaw)*, 912 F.2d 1255, 1257 (10th Cir.1990) ("There simply is no room in the wording for construing Rule 4003(b) or Rule 9006(b) to permit granting an extension of time to file objections outside the original thirty-day time limit."); *accord Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 598–99 (6th Cir.1997); *Stoulig v. Traina (Matter of Stoulig)*, 45 F.3d 957 (5th Cir.1995).

ply, because there is a new meeting of creditors there is a new period to object.

We do not deny the superficial appeal of this reasoning. It was adopted by the lower courts and the dissent argues vigorously that we affirm it on appeal. *See* dis. op. *post* at 206–07. The same reasoning has been endorsed by several bankruptcy courts. *See, e.g., In re Havanec,* 175 B.R. at 921; *In re de Kleinman,* 172 B.R. at 768–69; *Matter of Bergen,* 163 B.R. 377, 379 (Bankr.M.D.Fla.1994); *LaRossa v. Leydet (In re Leydet),* 150 B.R. 641, 643–44 (Bankr.E.D.Va.1993). We reject it because we find it incompatible with both the language and the purposes of the Code.

The Bankruptcy Code presents three significant bars to appellee's reading: (1) the Post–Conversion Meeting was not "a meeting of creditors held pursuant to Rule 2003(a)," Fed R. Bankr.P. 4003(b), in that it was not convened within 40 days of the order of relief; (2) the period for objections is not within the specifically enumerated exceptions to the general rule that the date of the "order for relief" is unaffected by conversion, *see* 11 U.S.C. § 348(a), (b), therefore this limitations period remains unaffected by conversion; and (3) allowing a new objections period is incompatible with the previously effected exemption of the debtor's property under 11 U.S.C. § 522(*l*) and impermissibly allows a procedural rule to abridge a substantive right, *see* 28 U.S.C. § 2075. We develop each of these arguments below.

We, therefore, cannot agree with the dissent that this case presents a choice between two policy positions, both with "strong textual support." Dis. op. *post* at 206. We hold that when a case is converted from Chapter 11 to Chapter 7 there is no new period to object to previously claimed exemptions. While we reach this conclusion on the basis of statutory construction alone, we also find unpersuasive those lower courts that have held that our conclusion ignores the policy of the Code and the "practicalities" of its administration.

## C. Statutory Construction

### 1. The Post–Conversion Meeting was not a "meeting of creditors held pursuant to Rule 2003(a)"

 Read "[l]iterally," *In re Havanec,* 175 B.R. at 921, neither Rule 4003(b) nor Rule 2003(a) supports the appellee's argument. *See also* dis. op. *post* at 207. Although it is true that a conversion "constitutes an order for relief" under 11 U.S.C. § 348(a), that very section also states that a conversion "does *not effect a change in the date* of ... *the order for relief.*" *Id.* (emphasis added). Here, debtor's voluntary filing of a petition under Chapter 11 on June 13, 1996, constituted an "order for relief." *See* 11 U.S.C. § 301. The date of that "order for relief" was the date of the commencement of the voluntary case. *See id.* Under section 348(a), conversion leaves that date unchanged; accordingly, all provisions of the Code that are keyed to that date are also unaffected by conversion. *See F & M Marquette Nat'l Bank v. Richards,* 780 F.2d 24, 26 (8th Cir.1985); 3 *Collier on Bankruptcy* ¶ 348.02, at 348–6 (Lawrence P. King ed., 15th ed. rev.1999). The time periods for holding a meeting of creditors established by section 341(a) and Rule 2003(a) are keyed to "the order for relief."[9] Hence, a meeting of creditors convened "pursuant to Rule 2003(a)" is convened within 40 days (subject to extension to 60)[10] of the

---

9. In turn, the time periods of Rule 2003(a) are strictly enforced—"[t]he court may not enlarge the time for taking action under Rule[] ... 2003(a)." Fed R. Bankr.P. 9006(b)(2). In the Bankruptcy Code " 'may not' is prohibitive, and not permissive." 11 U.S.C. § 102(4) ("Rules of construction").

10. We note that the Original Meeting of creditors, on August 12, 1996, was convened 60 days after the order for relief. Rule 2003(a) allows a meeting to be convened up to 60 days from the order for relief where the place designated for the meeting is "not regularly staffed by the United States trustee or an

order for relief—in this case, within 40 (or 60) days of the commencement of the voluntary case under Chapter 11, on June 13, 1996. The Post–Conversion Meeting of creditors was not convened until October 16, 1997, sixteen months after the order for relief. In this case, the "meeting of creditors held pursuant to Rule 2003(a)" referred to in Rule 4003(b) was the Original Meeting, convened on August 12, 1996, shortly after the commencement of the Chapter 11 case, and not the Post–Conversion Meeting convened over a year later after the conversion to Chapter 7.

We therefore reject the construction that "[r]ead literally, ... Rule 4003 permits two 30-day periods during which objections may be made to exemptions claimed by a debtor." *In re Havanec*, 175 B.R. at 921. Because there is one date of the order for relief (regardless of conversion), *see* 11 U.S.C. § 348(a), there can be only one deadline 40 (or 60) days from that date for the meeting of creditors held pursuant to Rule 2003(a). Any appeal to Rule 4003(b) is therefore unavailing, because Rule 4003(b) allows as timely filed only those objections filed "within 30 days after the conclusion of the meeting of creditors *held pursuant to Rule 2003(a)*." *See In re Halbert*, 146 B.R. 185, 189 (Bankr. W.D.Tex.1992) (holding that post-conversion meeting of creditors required to elect Chapter 7 trustee, pursuant to 11 U.S.C. § 702, is not meeting of creditors pursuant to Rule 2003(a)). Here, the only meeting convened within that time period was the Original Meeting. Therefore, Rule 4003(b)'s 30-day time period for objections

began to run from the date of the conclusion of that meeting, *i.e.*, from May 14, 1997. Any objection to exemptions filed after June 13, 1997 was therefore untimely. Because the Chapter 7 trustee's objection was not filed until November 19, 1997, it was untimely.[11]

2. *Appellee's reading is not authorized by any of the specifically enumerated exceptions to the general rule that the date of the "order for relief" is unaffected by conversion*

Rule 1019(2) expressly provides that conversion triggers new time periods for filings under Rules 3002, 4004 and 4007. It does not provide for a new time period for filing objections to exemptions under Rule 4003(b). Debtor and appellee dispute the significance of this silence. Debtor argues that the exclusion of Rule 4003(b) from Rule 1019(2)'s precise listing of new time periods must be taken to be intentional and to preclude any similar treatment of the time period for objections under Rule 4003(b). Debtor argues that such an extension would be an unwarranted *expansion* of the exclusive list provided in Rule 1019(2). Appellee responds that not to allow the extension is an unwarranted *restriction* of the plain meaning of Rule 4003(b), in that disallowing the extension limits the meaning of "meeting of creditors" to *only* the first meeting of creditors in a converted case. *See In re Leydet*, 150 B.R. at 643. According to this argument, Rule 1019(2) makes no reference to extending the time periods under Rule 4003(b) because the meaning of "meeting

assistant who may preside at the meeting." While the record is silent on this matter, we infer that this must have occurred in the present case, because Rule 9006(b)(2) prohibits any extension of the time periods established under Rule 2003(a). In any event, neither party argues that the Original Meeting of creditors was itself untimely.

11. We do not hold that objections first filed at or following a post-conversion meeting can never be timely. Where the conversion between chapters happens swiftly after entry of the original order of relief, objections filed in

the converted case may still be timely within the time periods established by the pre-conversion case. For example, this scenario might happen where an involuntary proceeding is brought under Chapter 11 and the debtor voluntarily converts to Chapter 7. Similarly, the Chapter 11 meeting of creditors might be adjourned without being "concluded," thereby tolling the 30-day objections period. We hold only that conversion of itself does not give rise to an extension of the time period to file objections.

of creditors" so plainly embraces *any* meeting of creditors that the reference was "unnecessary." *In re Leydet,* 150 B.R. at 643; *see also In re Havanec,* 175 B.R. at 924 ("For all that appears[,] the draftsmen of Rule 1019(2) might well have concluded that the language of Rule 4003(b) was sufficiently clear to assure that the trustee could object to claims following the conclusion of the chapter 7 creditors meeting after the case had been converted."); *accord* dis. op. *post* at 208.

■ We reject appellee's argument. First, as noted above, the text of Rule 4003(b) does not refer to any "meeting of creditors" but rather "the meeting of creditors held *pursuant to Rule 2003(a)*." As explained above, that restriction limits the time period for objections to 30 days following the conclusion of a meeting of creditors convened within 40 (or 60) days of the "order for relief." Second, Rule 1019 is intended to implement 11 U.S.C. § 348 and cannot be construed independently of that section. To understand Rule 1019 we must look to section 348.

■ The purpose of section 348 is to preserve actions already taken in the case before conversion. *See Kepler v. Independence Bank (Matter of Ford),* 61 B.R. 913, 916 (Bankr.W.D.Wis.1986) ("The express intent of Bankruptcy Rule 1019 which implements section 348 is to preserve any action taken in the case prior to conversion"); 3 *Collier on Bankruptcy* ¶ 348.08, at 348–22 & n. 2; 9 *id.* App. 1019, at 1019–29 (reproducing 1983 Advisory Committee Note to Rule 1019 ("This rule . . . implements § 348 of the Code. . . . The rule is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7." [12])).

■ In short, section 348 is designed to avoid precisely the resetting of deadlines and the reopening of limitations periods that the appellee advocates. To effect this purpose, section 348(a) establishes the general rule that, in a converted case, the dates of the filing, the commencement of the case and the order for relief remain unchanged by the conversion, except as expressly provided in subsections (b) and (c). As to "the order for relief," subsections 348(b) and 348(c) enumerate specific exceptions to the general rule, setting out those sections where in a converted case the date of the conversion shall serve as the date of the "order for relief under this chapter." [13] In turn, Rule 1019(2) can give

---

**12.** We note that the language of Rule 1019 was amended in 1997 to delete the terms "superseded case" and "original petition." The Advisory Committee note to the 1997 Amendment clarifies that § 348, as implemented by Rule 1019, intends continuity in conversion cases. "The phrase 'superseded case' is deleted because it creates the erroneous impression that conversion of a case results in a new case that is distinct from the original case. Similarly, the phrase 'original petition' is deleted because it erroneously implies that there is a second petition with respect to a converted case. *See* § 348 of the Code." Fed. R. Bankr.P. 1019 advisory committee's note to 1991 Amendments, *reprinted in* 9 *Collier on Bankruptcy* App. 1019, at 1019–33.

**13.** The enumeration of these exceptions under 11 U.S.C. §§ 348(b) and (c) reads in full:
 (b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.
 (c) Sections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, 1208, or 1307 of this title, as if the conversion order were the order for relief.
Of those sections relevant to a case converting into Chapter 7, sections 727(a)(10) and 727(b) concern dischargeability; sections 728(a) and 728(b) are special taxation provisions (and by their own terms are not applicable where a case converts from Chapter 11); and section 701(a) relates to the appointment of the interim Chapter 7 trustee. None of these relates to the claim of exemptions or the right to object thereto. Sections 342 and 365(d) pertain to notice and executory contracts and unexpired leases.

effect only to these enumerated exceptions to the general rule.[14] Neither section 341 nor section 702(b) (providing for the election of the Chapter 7 trustee "[a]t the meeting of creditors held under section 341") is among these enumerated exceptions. Moreover, subsection 348(c)—set out in the margin—clearly shows that Congress knew how to draft precisely the language necessary to apply a general administrative rule (section 341) in the special context of a converted case, such that deadlines keyed to the meeting of creditors were reset to run from the date of conversion. We cannot regard it as accidental or unintentional that Congress omitted section 341 from its precisely drafted list of circumstances as to which

conversion triggers a new date for the order for relief. Unable to point to a provision that supports her position, the appellee implicitly asks us to redraft the Code to include a provision that is conspicuously absent. It would be inappropriate to do so.[15]

The reach of Rule 1019(2) is circumscribed by 11 U.S.C. § 348. Rule 1019(2) fails to mention Rule 4003(b) not because the language of Rule 4003(b) is so clear that it need not be expressly listed among the rules with deadlines extended on conversion, *see* dis. op. *post* at 225, but because there is no statutory authorization under section 348 for extending the time to object to claimed exemptions.[16]

14. For example, as noted, Rule 1019(2) extends the deadlines of Rules 4004(b) and 4007(c), which rules govern complaints objecting to discharge and the determination of the dischargeability of debt. Rule 1019(2) was amended in 1987 to include reference to these rules to codify the holding in *F & M Marquette Nat'l Bank v. Richards*, 780 F.2d 24 (8th Cir.1985). *See* Fed R. Bankr.P. 1019 advisory committee's note to 1987 amendments, *reprinted in 9 Collier on Bankruptcy* App. 1019[2], at 1019–31. That case held, in the alternative, that conversion triggered an extension of the sixty-day period for filing dischargeability complaints because of the operation of 11 U.S.C. § 348(b), which *includes* § 727(b) as one of the Code's provisions specifically excepted from the general rule of section 348(a). *See* 780 F.2d at 26 ("For purposes of the dischargeability of debts, the conversion becomes the order for relief in the converted proceeding." (citing 11 U.S.C. § 348(b)'s reference to 11 U.S.C. § 727(b))). No such statutory authorization exists in the present case.

15. *See United States v. Smith*, 499 U.S. 160, 167, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991) ("Where Congress explicitly enumerates certain exceptions ... additional exceptions are not to be implied ...") (internal quotation marks and citation omitted); *Commissioner v. Clark*, 489 U.S. 726, 739, 109 S.Ct. 1455, 103 L.Ed.2d 753 (1989) (noting that where "a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision"). Here, unlike *Clark*, where the Court invoked the principle favoring narrow reading of exceptions in order to reject an expansive reading of a "somewhat

ambiguous exception," *id.*, Congress could not have been clearer in enumerating the exact sections and subsections of the Code to which the exception applies. None of those excepted sections authorizes an extension of the time to file objections.

16. In one respect, the dissent misperceives our holding. We do not hold that "there is no § 341 meeting after conversion." Dis. op. *post* at 222; *see also id.* at 225 ("the majority concludes that Congress ... rejected an opportunity for a post-conversion meeting of creditors"). We hold only that a post-conversion meeting of creditors does not automatically reset the time periods keyed to the order for relief, unless section 348 otherwise provides. Not every section 341 meeting of creditors is a mandatory meeting required by subsection 341(a) and Fed. R. Bankr.P.2003(a). And not every meeting of creditors is triggered by the entry of an order for relief.

For example, if a Chapter 7 trustee dies or resigns, or fails to qualify under section 322 or is removed under section 324, creditors may vote for a successor trustee at a meeting of creditors according to the procedures set out in section 702. *See* 11 U.S.C. §§ 703(a), 702(b). The election of a trustee requires a meeting of creditors. *See* 11 U.S.C. § 702(b). That meeting of creditors would be "held under section 341," *id.*, but such a meeting is not a mandatory meeting of creditors under subsection 341(a) and Fed. R. Bankr.P. 2003(a), has no effect on the date of the order for relief, and therefore does not reset the time periods keyed to that order for relief. Clearly, not every meeting of creditors gives rise to a renewed period for objections to claimed exemptions.

*3. A new objections period is incompatible with the substantive effect of 11 U.S.C. § 522(l) and impermissibly allows a procedural rule to abridge a substantive right*

 *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), teaches that "[s]tatutory construction . . . is a holistic endeavor." Even if the Code and Rules left it ambiguous (as they do not) whether conversion resets the deadline for objections under Rule 4003(b), only the conclusion that it does not "produces a substantive effect that is compatible with the rest of the law." *Timbers of Inwood Forest Assocs.*, 484 U.S. at 371, 108 S.Ct. 626. Because the result advocated by the appellee and the dissent conflicts with well-settled law on the effect of 11 U.S.C. § 522(*l*) on the debtor's property rights, we must reject it.[17]

 The voluntary, joint, or involuntary filing of a petition under an applicable chapter of the Code constitutes a commencement of the case and "creates an estate . . . [comprised, except as otherwise provided, of] all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thereafter, the property of the estate is distinct from the property of the debtor. Property acquired by the estate after the commencement of the case, *see* 11 U.S.C. § 541(a)(7), together with "[p]roceeds, product, offspring, rents, or profits of or from property of the estate,"

*id.* § 541(a)(6), is property of the estate. But property acquired post-petition by the debtor does not enter the estate; it remains the separate property of the debtor. *See Casey v. Hochman*, 963 F.2d 1347, 1351 (10th Cir.1992) (stating "general rule that post-petition acquisitions are property of the debtor"); *accord In re Winom Tool & Die, Inc.*, 173 B.R. 613, 624 (Bankr. E.D.Mich.1994); *see also* 5 *Collier on Bankruptcy* ¶ 541.03, at 541–9 to 10 ("In general, property . . . subsequently acquired by the debtor does not become property of the estate, but, rather, becomes the debtor's personal property, clear of all claims that are discharged in the bankruptcy case.").

 Such after-acquired property includes property that exits the estate and revests in the debtor through the exemption process. As already noted, the Code provides that "[u]nless a party in interest objects [to the debtor's claim], the property claimed as exempt . . . *is exempt.*" 11 U.S.C. § 522(*l*) (emphasis added). It is well-settled law that the effect of this self-executing exemption is to remove property from the estate and to vest it in the debtor. *See Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (when property becomes exempt, it is "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor"); *Redfield v. Peat, Marwick, Mitchell & Co. (In re Robertson)*, 105 B.R. 440, 446 (Bankr.N.D.Ill.1989) ("The effect

The result is no different in the case of conversion, when the election procedures set out in section 702 are invoked by operation of section 701 rather than section 703. We do not dispute that a new meeting of creditors may be required in order to elect a Chapter 7 trustee when a case is converted from Chapter 11 into Chapter 7. *See F & M Marquette Nat'l Bank*, 780 F.2d at 25; dis. op. *post* at 224. We hold only that such a meeting is not the mandatory meeting required under section 341(a) and Fed. R. Bankr. 2003(a) and that it has no effect on the limitations period established by Fed. R. Bankr. 4003(b). *See In re Halbert*, 146 B.R. at 189.

17. As regards consistency with the overall statutory scheme, we note that our holding that the conversion of case from Chapter 11 to Chapter 7 does not trigger a new period for objections also comports with the rule that the exemptions that the debtor is entitled to claim are those that were in effect and to which he was entitled at the time of the original filing and not at the time of the conversion. *See In re Beshirs*, 236 B.R. 42, 45 (Bankr.D.Kan.1999) (Chapter 13 to Chapter 7 conversion); *DiBraccio v. Ferretti (In re Ferretti)*, 230 B.R. 883, 889–90 (Bankr. S.D.Fla.1999) (Chapter 13 to Chapter 7 conversion) (collecting cases).

of the automatic allowance of a claim of exemption due to expiration of the 30–day period is, under well-settled case law, to revest the property in the Debtor and end its status as property of the estate") (internal quotation marks and citation omitted); *accord In re Halbert*, 146 B.R. at 188–89 (collecting cases); *In re Brown*, 178 B.R. at 726–27 (collecting cases); *see also Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341 (2d Cir.1983) (Friendly, *J.*) (where a debtor has already "reclaimed" exempted property from the estate, a dispute over such property is not sufficiently "related to" the bankruptcy case to sustain federal jurisdiction under the identical predecessor to 28 U.S.C. § 1334(b)). *Cf.* 11 U.S.C. § 1123(c) (in Chapter 11, if the debtor does not propose a reorganization plan and the court approves a plan proposed by a creditor, such plan may not provide for the "use, sale, or lease" of exempted property unless the debtor consents). Quite simply, property that has been exempted belongs to the debtor. The subsequent conversion of the bankruptcy case from Chapter 11 to Chapter 7 does nothing to disturb the debtor's rights in that property.

▮▮▮▮ Where property has otherwise left the Chapter 11 estate and revested in the debtor, courts have had no difficulty in recognizing that conversion to a Chapter 7 case "does nothing to recapture the property." *In re Brown*, 178 B.R. at 727. Under 11 U.S.C. § 1141(b), "the confirmation of a plan vests all of the property of the estate in the debtor." Once the property has so vested it "does not reenter the chapter 7 estate in the event of conversion." *In re Winom Tool & Die, Inc.*, 173 B.R. at 619; *see also Carter v. Peoples Bank & Trust Co. (In re BNW, Inc.)*, 201 B.R. 838, 848–50 (Bankr.S.D.Ala.1996) (once property has vested in reorganized entity pursuant to 11 U.S.C. § 1141(b) it is beyond the bankruptcy court's jurisdiction; conversion to Chapter 7 can neither confer jurisdiction nor vacate the confirmation order and recapture property within the estate). There is no reason why property

that has left the estate by virtue of being exempted by the operation 11 U.S.C. § 522(*l*) should be treated differently from property that has left the estate by virtue of confirmation of the plan under 11 U.S.C. § 1141(b). Both are now the property of the debtor, form no part of the bankruptcy estate, and are beyond the jurisdiction of the bankruptcy court.

In short, for creditors to have a new opportunity to object upon conversion, property previously exempted and revested in the debtor must somehow be restored to the estate. But the appellee identifies no provision in the Code that effects the recapture by the estate of previously exempted property upon conversion of a case from Chapter 11 to Chapter 7. Section 348 does not effect such a reversal. *See Robb v. Lybrook (In re Lybrook)*, 107 B.R. 611, 613 (Bankr.N.D.Ind.1989) ("[Section 348] should not be read as a nullification act. It is not designed to change what has gone before but, rather, to leave matters as they exist on the date of conversion."), *aff'd* 135 B.R. 321 (N.D.Ind.1990), *aff'd* 951 F.2d 136 (7th Cir. 1991); *Matter of Ford*, 61 B.R. at 916 ("The express intent of Bankruptcy Rule 1019 which implements section 348 is to preserve any action taken in the case prior to conversion."); 3 *Collier on Bankruptcy* ¶ 348.08, at 348–22 & n. 2; 9 *id.* App. 1019, at 1019–29 (reproducing 1983 Advisory Committee Note to Rule 1019 ("This rule . . . implements § 348 of the Code. . . . The rule is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7.")).

While the general rule is that property acquired by the debtor post-petition belongs to the debtor, not to the estate, Congress has elsewhere provided exceptions. Under some chapters of the bankruptcy code—but not Chapter 11—Congress has expressly provided for an expanded definition of "property of the estate" which includes property acquired post-petition by the debtor. Thus, Chap-

ter 12 (providing for family farm reorganizations) defines the "property of the estate" to include "in addition to the property specified in section 541 ... all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, *or converted to a case under chapter 7 of this title.*" 11 U.S.C. § 1207(a) (emphasis added). Under this provision, courts held that the post-conversion estate under Chapter 7 included the property acquired by the debtor after filing the petition under Chapter 12 but before conversion. *See, e.g., Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir.1994) (upon conversion of a Chapter 12 case to a Chapter 7 case, the debtor's after-acquired property becomes property of the estate in the Chapter 7 case); *In re Mutchler,* 95 B.R. 748, 752 (Bankr. D.Mont.1989); *Matter of Brownlee,* 93 B.R. 662, 665 (Bankr.S.D.Iowa 1988). Property so acquired would, of course, include any exempt property revested in the debtor.

 Chapter 13 contains a substantively identical provision. *See* 11 U.S.C. § 1306(a).[18] Accordingly, before 1994 most courts of appeals also held that upon conversion from Chapter 13 to Chapter 7

all property of the Chapter 13 estate—including after-acquired property that is part of the Chapter 13 estate pursuant to § 1306(a)—was included in the Chapter 7 estate. *See Calder v. Job (In re Calder),* 973 F.2d 862, 865–66 (10th Cir.1992); *Matter of Lybrook,* 951 F.2d 136 (7th Cir.1991) (Posner, *J.*); *Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087, 1090 (8th Cir. 1984). *But see Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 803 (3d Cir.1985) (suggesting in dicta that after-acquired property should not be part of the post-conversion Chapter 7 estate because that would deter the use of Chapter 13). In the Bankruptcy Reform Act of 1994, Congress resolved this circuit split, but greatly mitigated the potential impact of 11 U.S.C. § 1306, by enacting 11 U.S.C. § 348(f). Under 11 U.S.C. § 348(f), on conversion of the Chapter 13 proceeding, after-acquired property does not form part of the converted estate—unless the case was converted in bad faith, *see* 11 U.S.C. § 348(f)(2). In cases of bad faith conversion, the converted estate includes all Chapter 13 estate property, as defined in 11 U.S.C. § 1306—*i.e.,* the bad faith converter receives pre-Reform Act treatment.[19]

Congress has not included in Chapter 11 a provision comparable to sections

---

**18.** Section 1306(a) reads in relevant part:
 Property of the estate includes, in addition to the property specified in section 541 of this title ... all property of the kind specified in such section that the debtor acquires [and earnings from services performed by the debtor] after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title....

**19.** The dissent reads 11 U.S.C. § 348(f)(1) to include in the converted estate property exempted from the Chapter 13 estate but still in the possession of the debtor at the time of conversion, even in those cases where the conversion is in good faith such that other property acquired post-petition is not included in the converted estate. *See* dis. op. *post* at 226–27. This is certainly a proper reading. What is less clear is how it helps the dissent's argument in the context of Chapter 11 to

Chapter 7 conversions—the limit of our holding. Before 1994, according to the majority view, the converted estate would have included *all* the after-acquired Chapter 13 property (including property acquired by the debtor through the effect of exemptions). That Congress chose to mitigate the effect of 11 U.S.C. § 1306 in the case of good faith filings, but chose not to do so to the extent of excluding exempted property from the converted estate, does nothing to undermine our argument that Congress has *never* in the case of Chapter 11 enacted a provision that expands the § 541 estate in the first place. There has never been a provision parallel to §§ 1207 and 1306 within Chapter 11. Our point that Congress consciously designed Chapter 11 to work differently from Chapter 13 and Chapter 12 is unaffected by the fact that Congress has subsequently modified the workings of Chapter 13.

1207(a)(1) and 1306(a)(1) that could include in the estate property acquired by the debtor after the initial petition. *See Koch v. Myrvold,* 784 F.2d 862, 863 (8th Cir. 1986) (property obtained by the debtor after the original petition in Chapter 11 but before conversion to Chapter 7 does not belong to the post-conversion estate). While the provisions of Chapter 12 or those of Chapter 13 may have lent support to the appellee's position had the debtor's conversion arisen under one of those chapters, the absence of comparable provisions in Chapter 11 compels the contrary result.[20]

▮▮▮ Therefore, we conclude not only does the appellee's position have little foundation in the text of the Code, it advocates a result that directly conflicts with the substantive effect of 11 U.S.C. § 522(*l*). Moreover, inasmuch as it relies on a procedural rule—Rule 4003(b)—in derogation of the debtor's substantive property rights, her argument is expressly barred. *See* 28 U.S.C. § 2075 (Bankruptcy "rules shall not abridge, enlarge, or modify any substantive right.").

\* \* \*

▮▮▮ Because Rule 4003(b) requires that objections be filed within 30 days of the conclusion of the meeting of creditors held pursuant to Rule 2003(a), *see* Rule 4003(b), and because the meeting of creditors held under Rule 2003(a) must be held within 40 days of the order for relief, *see* Rule 2003(a), objections made six months

after the conclusion of that meeting of creditors are untimely. And because conversion does not change the date of the order for relief, *see* 11 U.S.C. § 348(a), that conversion does not reset the limitations period for filing objections to a debtor's claimed exemptions. Further, a new period for objections would derogate a debtor's substantive property rights in property timely exempted under 11 U.S.C. § 522(*l*). We therefore hold that: The conversion of a case from Chapter 11 to Chapter 7 does not give rise to a new period to object to the debtor's claimed exemptions.[21]

Applying this rule of law to the undisputed facts of this case we conclude: (1) the last date for timely objection to debtor's claimed exemptions was June 13, 1997; (2) the Chapter 7 trustee's objection to debtor's exemptions, filed on November 19, 1997, was untimely; (3) as of June 14, 1997, by operation of 11 U.S.C. § 522(*l*), the property claimed as exempt became exempt; it no longer formed part of the 11 U.S.C. § 541 estate but revested in the debtor, clear of all claims that are discharged in the bankruptcy proceedings.

### D. Policy Considerations

While we rest our holding on statutory construction, courts that have ruled that conversion from Chapter 11 to Chapter 7 gives rise to a new period for objections have been troubled primarily by their perception of the adverse policy consequences of our interpretation.[22] In their view our

20. Our holding is limited to conversions from Chapter 11 to Chapter 7. We express no view on the effect of other conversions, particularly those from Chapter 13 to Chapter 7, on the time period to file objections. However, because of the differences in the statutory provisions noted above we disagree with those courts that decline to distinguish between conversions from Chapters 11, 12 or 13. *See, e.g., Matter of Bergen,* 163 B.R. at 379 ("In the context of objections to exemptions and conversion to Chapter 7, there does not appear to be cause to distinguish the right to object from Chapter 11, 12 or 13 cases.").

21. If the debtor files amended schedules of exemptions on conversion, then a renewed period for objections would, of course, be proper because Rule 4003(b) also provides a thirty-day time period to object running from the date the debtor files "any amendment to the list or supplemental schedules." But such a renewed period for objections is triggered by the debtor's amendment not the conversion itself. Moreover, the scope of the objections is limited to the amended claims.

22. Finding the statutory directive inconclusive and ambiguous, these courts turn to policy rationales to support their holdings. *See In re Leydet,* 150 B.R. at 644 ("When faced

holding "urges an impractical and unrealistic interpretation of the bankruptcy process." *In re de Kleinman*, 172 B.R. at 769. Because we find that this precisely drafted statute and the rules promulgated under it unambiguously foreclose a new period for objections, we may not be governed by policy considerations.[23] *See, e.g., Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished."). Unless it leads to "absurd or futile" results, *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), we must enforce what Congress has commanded whether or not we agree with its policy choices. Nevertheless, we have considered the policy arguments advanced by the dissent and by those courts that have reached the contrary result. We do not find their arguments compelling.

### 1. Does our ruling encourage abusive conversions from Chapter 11 to 7?

Courts concluding that policy considerations compel a finding that conversion gives rise to a new period for objections

fear that our contrary holding invites abusive filings under Chapter 11 solely for the purpose of claiming baseless exemptions and immunizing them from post-conversion challenge in the Chapter 7 proceedings. *See, e.g., In re Havanec*, 175 B.R. at 924 ("A contrary holding would increase the potential for abuse. . . ."); *Matter of Bergen*, 163 B.R. at 380; dis op. *post* at 226. Under this scenario—in the words of Judge Conrad below—"many debtors could . . . file a Chapter 11, have their 341(a) hearing, claim their exemptions, and then convert to Chapter 7, and the trustee would be forever barred from objecting." We find these fears overstated for several reasons.[24] First, individual exemptions are rarely at issue in Chapter 11 filings, because few individuals file under this Chapter. Second, the argument is premised on a belief that only trustees have the expertise and the incentive to raise objections.

▆▆▆▆ First, we note that exemptions are only available to individual debtors. *See* 11 U.S.C. § 522(b) (stating in pertinent part "an individual debtor may exempt from property of the estate . . ."). They are not available to partnerships or corporations. *See, e.g., Matter of SA Auto–Jack, Inc.*, 380 F.Supp. 99, 100 (N.D.Cal.1974) (holding that corporations are not entitled to claim exempt property);

---

with two possible interpretations of the bankruptcy code and rules I am inclined to choose the interpretation that makes practical sense."); *In re de Kleinman*, 172 B.R. at 769 ("The rule authorizing a new objection period represents the only practical construction of the law."); *In re Havanec*, 175 B.R. at 924 ("[T]he realities of bankruptcy administration militate in favor of finding a new objection period . . . ."); *see also Matter of Bergen*, 163 B.R. at 379 ("[T]he Court in *Leydet*, in admitting there was no authority for its decision, relied upon 'practical sense' and not any defined rule of law." (emphasis added)). The dissent "set[s] aside" the text of the Code and the Rules to focus on "practicalities." Dis. op. *post* at 226. And both the district court and the bankruptcy court below stressed the policy concerns. *See Bell v. Obuchowski (In* 

*re Bell)*, No. 1: 98CV111, slip op. at 3 (Bankr.D. Vt. June 8, 1998).

**23.** We disagree with those decisions that find that the Code and the Rules are inconclusive and allow either the reading advanced by the debtor or the appellee. *See, e.g., In re Havanec*, 175 B.R. at 923 ("Nothing in the language of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure compels the choice of one result or the other."); *Matter of Bergen*, 163 B.R. at 380 ("There is nothing in the Bankruptcy Code or Rules which forecloses objections to exemptions subsequent to a meeting of creditors in a converted case."). The dissent adopts this view. *See* dis. op. *post* at 222, 226.

**24.** These fears are particularly misplaced in this case, where the conversion was involuntary.

11 U.S.C. § 101(41) (defining "person" to include the mutually exclusive categories of "individual, partnership and corporation"). While it is now settled that individuals may file their petitions under Chapter 11, whether or not they are engaged in business as sole proprietors, *see Toibb v. Radloff,* 501 U.S. 157, 161, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), Chapter 11 was primarily intended for business reorganizations, *see id.* at 162, 111 S.Ct. 2197 (citing legislative history). In turn, Chapter 11 is simply not an attractive vehicle for individual consumer bankruptcies. Its procedures are complex, requiring greater disclosure and reporting to court and creditors. *See* S.Rep. No. 95–989, at 3 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5789. Chapter 11 filing fees are higher than those in Chapters 7 and 13. *Compare* 28 U.S.C. § 1930(a)(1) (filing fee of $155 in Chapters 7 and 13) *with id.* § 1930(a)(3) (filing fee of $800 in non-railroad Chapter 11). And debtors must pay additional fees each quarter until dismissal or conversion, ranging from $250 to $10,000 depending on size of disbursements. *See id.* § 1930(a)(6). Further, the Bankruptcy Reform Act of 1994 significantly increased the limits on the debts of those eligible to file under Chapter 13, raising the limit on unsecured debt from $100,000 to $250,000 and the limit on secured debt from $350,000 to $750,000. *See* 11 U.S.C.

§ 109(e).[25] As a consequence, many more individual debtors may file under Chapter 13 who previously would have had to file under Chapter 11 if they sought bankruptcy relief but wished to avoid the liquidation proceedings of Chapter 7.[26] In short, individuals filing under Chapter 11 are likely to be a small and shrinking class.

We note that the data confirm the hypothesis that individual, non-business Chapter 11 filings are an uncommon occurrence. Of the 85,377 bankruptcy petitions filed in this Circuit in the twelve-month period ending September 30, 1999, only 827 (or less than 1.0%) were Chapter 11 filings and an insignificant 101 (or less than 0.12%) were non-business, individual filings under Chapter 11. *See 1999 Judicial Business of the United States Courts: Annual Report of the Director* 271 tbl. F–2.[27] The number of cases that subsequently convert to Chapter 7 is necessarily a subset of this already insignificant group.[28]

Because only individuals may claim exemptions and because very few individuals file Chapter 11 petitions, we do not share the fears of those courts that have anticipated a rush of abusive filings under Chapter 11.[29] Inasmuch as these courts have been really concerned about abuse in Chapter 13 to Chapter 7 conversions, these concerns are beyond the scope of our holding. Finally, as the Supreme Court noted in *Taylor,* the Code and Rules already

25. From 1998 onward, 11 U.S.C. § 104 provides that these statutory limits shall be index-linked to inflation and adjusted every three years. The current limits for unsecured and secured debt are $269,250 and $807,750 respectively. *See* Revision of Certain Dollar Amounts in The Bankruptcy Code, 63 Fed. Reg. 7179 (1998).

26. Both Chapter 11 (Reorganization) and Chapter 13 (Adjustment of Debts of an Individual With Regular Income) allow bankruptcy relief without liquidation. In general, however, it is more advantageous for an individual who is eligible to file under either chapter to file under Chapter 13. *See generally* Craig A. Gargotta, *Death, Taxes and the Bankruptcy Reform Act of 1994,* 13 Am. Bankr.Inst. J. 10 (Jan.1995).

27. The nationwide statistics are similar. Of 1,354,376 bankruptcy petitions filed in the same period, 8,982 (some 0.66%) were Chapter 11, and only 744 (a mere 0.05%) were individual. *See id.*

28. The number of individual Chapter 13 filings in which claimed exemptions are relevant is significant. Of the 1,354,376 bankruptcy petitions filed nationally, 385,262 (or 28.4%) were Chapter 13, the vast majority of which, 379,215 (or 28.0%) were individual. *See id.*

29. The data does not show that individual Chapter 11 petitions are more common in those districts where the bankruptcy courts have held that conversion does not trigger a new period for objections.

provide significant deterrents against such abuse of bankruptcy proceedings. *See Taylor*, 503 U.S. at 644, 112 S.Ct. 1644; *see also* 11 U.S.C. § 727(a)(4)(B) (allowing denial of discharge for presentations of fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" under penalty of perjury); Rule 9011(b) (providing for sanctions for signing certain documents not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law" or lacking or unlikely to have "evidentiary support"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases).

 Second, the argument that our holding creates the opportunity for abusive filings is premised on the belief that only trustees will object to improperly claimed exemptions. While a trustee as a party in interest is entitled to object to a debtor's claimed exemptions, so too are the creditors. Unlike the trustee's primary responsibilities under 11 U.S.C. § 704(1), which are exclusive to the trustee, *see Matter of Perkins*, 902 F.2d 1254, 1257 (7th Cir. 1990), the right to object can be exercised by creditors. Were the right to object to exemptions exclusively the trustee's, the appellee's fears (if not her textual argument) would be better founded—and our holding would indeed remove the debtor's claim of exemptions from any effective scrutiny. But this is not the case.

We also find unpersuasive the argument that Chapter 11 creditors lack either the sophistication or the incentives to exercise their right to object. *See, e.g., In re Havanec*, 175 B.R. at 924 ("chapter 11 creditors ... are likely to have neither the interest nor expertise to [object to claimed exemptions]"); *In re Bergen*, 163 B.R. at 379 (without a trustee, objections must be made by creditors, and "[i]n fact, the exemptions may be of little importance to a creditor in the earlier stages of a Chapter 11 case ..."). As to lack of sophistication, Chapter 11 is premised on the assumption that the parties are sophisticated enough

to negotiate freely the terms of the reorganization plan (subject to the statutory safeguards of 11 U.S.C. § 1129). Whatever the limitations on the sophistication of individual creditors, creditors form committees to protect their common interests and frequently hire experienced counsel to advance their common goals. We are not persuaded by the argument that these same creditor parties—or their representatives—lack sufficient sophistication to appreciate the significance of failing to file timely objections. Further, the Code puts creditors on notice that conversion is in many cases the debtor's right. *See* 11 U.S.C. § 1112. As to lack of incentive, because the reorganization plan may not provide that any creditor (absent consent) receive a distribution with a present value less than that it would receive were the debtor liquidated under Chapter 7, *see* 11 U.S.C. § 1129(a)(7), creditors have a direct financial interest in challenging objections in the Chapter 11 proceeding.

### 2. Does our ruling render the role of the Chapter 7 trustee purposeless?

We are similarly unpersuaded by the argument that our holding renders the role of the Chapter 7 trustee meaningless in a case converted from Chapter 11. This argument is premised on the mistaken assumption that objecting to a debtor's claimed exemptions is the primary role of the Chapter 7 trustee.

 The duties of a Chapter 7 trustee are set out in detail in the nine subsections of 11 U.S.C. § 704. The duty to review and, if necessary object to, claimed exemptions is nowhere specifically mentioned—although it is subsumed within the general duty to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(4). Our holding merely precludes one component of a single duty among nine enumerated duties of the trustee. It is hard to see how this renders the trustee purposeless. In fact, of course, the primary purpose of the trustee—to collect, liquidate and distribute estate property thereby closing the estate

"as expeditiously as is compatible with the best interests of [the] parties"—clearly survives our holding. 11 U.S.C. § 704(1); *see Yadkin Valley Bank & Trust Co v. McGee (In re Hutchinson),* 5 F.3d 750, 753 (4th Cir.1993) (noting "duty to close the estate expeditiously is the trustee's 'main duty'" (citation omitted)); *Estes & Hoyt v. Crake (In re Riverside–Linden Inv. Co.),* 925 F.2d 320, 324 (9th Cir.1991) (describing section 704(1) duty to close estate expeditiously as "overriding responsibility" of Chapter 7 trustee).

\* \* \*

Having considered the policy objections, we cannot conclude that our construction of the Code leads to an "impractical" and "illogical" holding that "ignores the realities of the bankruptcy process." *E.g., In re Leydet,* 150 B.R. at 644. For certain, we cannot conclude that the result we reach through statutory construction is "absurd or futile." While reasonable people may disagree over the balance Congress has struck between countervailing interests under the current statutory scheme, because we find that statutory directive to be clear and because it does not lead to an absurd result, under well-established principles of statutory interpretation we must enforce it.

### III. CONCLUSION

For the foregoing reasons, we hold that conversion of a bankruptcy case from Chapter 11 to Chapter 7 does not create a new period to object to the debtor's previously claimed exemptions. The judgment of the District Court is REVERSED and the case is REMANDED with instructions to VACATE the order of the Bankruptcy Court and REMAND for further proceedings.

MORAN, Senior District Judge (dissenting).

The majority holds today that the trustee and creditors in a Chapter 7 case have fewer rights if the case was initiated by an individual under Chapter 11 and then converted (voluntarily or involuntarily) to Chapter 7 than they would have if the case had been originally filed under Chapter 7. Relying on the debatable maxim of statutory construction, *expressio unius est exclusio alterius,* the majority concludes that Congress and the Bankruptcy Advisory Committee have considered the situation before us and rejected an opportunity for a post-conversion meeting of creditors and an opportunity for the newly appointed Chapter 7 trustee to object to the debtor's claimed exemptions.

The majority overstates its case. It concludes that the contrary position—*i.e.,* the position adopted by the majority of bankruptcy courts and the lower court in this case—has only "superficial appeal" and rests solely on policy considerations. Maj. op. at 210. There is, however, a clear ambiguity in the Code with respect to the procedures appropriate in a Chapter 11 to Chapter 7 conversion. There is strong textual support for both positions, the closest Supreme Court decision [1] does not compel either result and there are policy considerations weighing in favor of both interpretations. The issue is ripe for a clarifying amendment or decision by the Supreme Court.

---

**1.** As the majority concedes, *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), can be read to support either position. Broadly considered, the case stands for the proposition that courts should not tinker with or ignore the plain language of the Code merely to avoid an unjust result in a particular case. If the microscope is lowered further, the case stands for the proposition that the thirty-day objection period prescribed by Rule 4003(b) is absolute, and an untimely objection by the trustee will have no effect even if the debtor had no colorable basis for claiming the exemption. In Mr. Bell's case, the Code and Rules of Bankruptcy Procedure produce an ambiguity which requires judicial interpretation. *Taylor* does not resolve the conflict. If a second objections period is required, *Taylor* would simply dictate that objections filed more than 30–days after the post-conversion creditors meeting would be untimely.

## I. *A Post–Conversion Objections Period is Required.*

The argument in favor of a new objections period following a post-conversion meeting of creditors has been well-stated on numerous occasions. *See, e.g., In re Alexander,* 239 B.R. 911, 914–15 (8th Cir. BAP 1999) (Chapter 13 to Chapter 7); *In re Wolf,* 244 B.R. 754 (Bankr.E.D.Mich. 2000) (Chapter 11 to Chapter 7); *In re Havanec,* 175 B.R. 920, 923–24 (Bankr. N.D.Ohio 1994) (same); *In re Bergen,* 163 B.R. 377 (Bankr.M.D.Fla.1994) (same); *In re de Kleinman,* 172 B.R. 764, 767–769 (Bankr.S.D.N.Y.1994) (same); *In re Leydet,* 150 B.R. 641 (Bankr.E.D.Va.1993) (same); *Weissman v. Carr (In re Weissman ),* 173 B.R. 235 (M.D.Fla.1994) (Chapter 13 to Chapter 7); *In re Jenkins,* 162 B.R. 579 (Bankr.M.D.Fla.1993) (same).

Briefly, the logic is as follows: The conversion of a bankruptcy case from one chapter to another constitutes an order for relief. 11 U.S.C. § 348(a). Within a reasonable time after the order for relief in a bankruptcy case, the United States trustee must convene and preside at a meeting of creditors. 11 U.S.C. § 341(a); *see also* Fed. R. Bankr.P. § 2003(a) (establishing time limits). Thus, when a case brought under Chapter 11 is converted to a Chapter 7 proceeding, a new meeting of creditors is convened. This new meeting is not a continuation of the creditors meeting in the pre-conversion case, but is a separate meeting for which a new trustee must be selected. *F & M Marquette Nat'l Bank v. Richards,* 780 F.2d 24, 25 (8th Cir.1985) (citing 11 U.S.C. § 348(e)). Federal Rule of Bankruptcy Procedure 4003(b) provides that the "trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) . . . ." Thus, read together, the provisions establish that a second objections period begins following the post-conversion creditors meeting.

This result makes sense. Because the goal of a Chapter 11 proceeding is reorganization, the trustee generally plays a more limited role than would a trustee appointed to oversee a Chapter 7 liquidation. The majority's approach will leave the new Chapter 7 trustee without an opportunity to object to claimed exemptions which received little or no scrutiny when reorganization was the focus. As the *Havanec* court observed, "[t]hat job will necessarily be left to Chapter 11 creditors who are likely to have neither the interest nor expertise to do so." 175 B.R. at 923; *see also In re Bergen,* 163 B.R. at 379; *In re de Kleinman,* 172 B.R. at 769.

## II. *The Alternative Position*

The majority has two principal reasons for concluding that a second objections period is prohibited by the Code: the limited lists of extended time periods enumerated in 11 U.S.C. § 348 and Bankruptcy Rule 1019(2), and the resulting "recapture" of previously exempted property if a second objections period is allowed. Although I concede that neither position is particularly tidy, I do not find the majority's reasoning sufficiently persuasive to overcome the obvious advantages of affording the newly-appointed Chapter 7 trustee an opportunity to object to the debtor's claimed exemptions.

### a. *Enumerated Exceptions and Extensions*

Section 341 of Title 11 provides, in relevant part, that

(a) Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

(b) The United States trustee may convene a meeting of any equity security holders.

Rule 4003(b), calling for the commencement of a 30–day objection period after the meeting of creditors, does not specify whether it applies to both meetings in a converted case or just the first one after the initial order of relief. Rule 1019(2)

addresses the extension of certain time periods upon the conversion of a case, but it does not mention Rule 4003(b). This intentional omission, the majority argues, follows from Congress' decision to omit § 341 from the list of enumerated circumstances in which the date of "the order of relief" is reset to the date of the conversion order.

The Debtor here filed his petition under Chapter 11 on June 13, 1996. The commencement of a voluntary case constitutes "an order for relief under such Chapter." 11 U.S.C. § 301. The case was converted from Chapter 11 to Chapter 7 on September 24, 1997. According to 11 U.S.C. § 348(a), that conversion also "constitutes an order for relief under the chapter to which the case is converted." Section 348(a), however, goes on to state that "except as provided in subsections (b) and (c) of this section, [the conversion] does not effect a change in the date of the filing of the petition, the commencement of the case, or *the order for relief.*" *Id.* (emphasis added). Therefore, according to the majority, for the purpose of the objections deadline, the "meeting of creditors" convened pursuant to section 341 and Rule 2003(a) was solely the meeting convened within 40 or 60 days of the commencement of the voluntary case, *i.e.* within 40 or 60 days of June 13, 1996. *See* maj. op. at 211.

*F & M Marquette Nat'l Bank v. Richards*, 780 F.2d 24 (8th Cir.1985), cited by

the majority in support of this position, actually rejected an analogous argument while considering the time period for dischargeability complaints.[2] The court held that a new meeting of creditors *is required* upon conversion from Chapter 11 to Chapter 7. *F & M*, 780 F.2d at 25 (citing 11 U.S.C. § 348(e) and the Advisory Committee Note to Rule 1019(2) ("A meeting of creditors may have been held in the superseded case as required by § 341(a) of the Code but that would not dispense with the need to hold one in the ensuing liquidation case.")).[3]

*F & M* is also instructive as to the soundness of the majority's reliance on a questionable canon of construction. Paragraph (2) of Rule 1019 used to be paragraph (3), until (2) was deleted in 1991 to eliminate redundancy. The Advisory Committee note to the 1987 amendments indicates that

> "paragraph (3) of the rule is expanded to include the effect of conversion of a Chapter 11 or 13 case to a Chapter 7 case. On conversion of a case from Chapter 11 or 13 to a Chapter 7 case, parties have a new period within which to file claims or complaints relating to the granting of the discharge or the dischargeability of a debt. This amendment is consistent with the holding and reasoning of the court in *F & M Marquette Nat'l Bank v. Richards*, 780 F.2d 24 (8th Cir.1985)."

---

**2.** The *F & M* court concluded that "debtor, at bottom, interprets section 348(a) for self-serving purposes in claiming that because a meeting of creditors was held in the previous Chapter 11 proceeding, his creditors should have only one opportunity in which to file their dischargeability complaints, regardless of the fact that his case was converted to another Chapter. We decline to construe the statutes and rules so narrowly." 780 F.2d at 26.

**3.** One bankruptcy court recently pointed out that unlike a debtor proceeding under Chapter 13, the Chapter 11 debtor has the exclusive right to file a plan for 120 days after the order for relief. *In re Wolf*, 244 B.R. at 758.

*See* 11 U.S.C. § 1121(b). "Meanwhile, the section 341 meeting is required to have been held no later than forty days after the order for relief." *Id.* In cases converting from 11 to 7, "the issue of exemptions does not effectively come into focus or play until after a plan is filed and a disclosure statement approved, and after that, at confirmation, and in effectuation of the § 1129(a)(7) 'best interest of creditors' test." *Id.*, 244 B.R. at 759. Considering these practicalities, the *Wolf* court concluded that "Not until the second § 341 hearing, after conversion, is there a trustee who has the incentive, focus, interest and awareness of the importance of the exemption issue...."

The note suggests that the Committee simply approved of the *F & M* decision regarding dischargeability and sought to codify it in the rules. Nothing in the advisory notes indicates that the Committee considered and rejected provisions to deal with a host of other possible effects of conversion. *See In re Leydet,* 150 B.R. at 643; *In re Havanec,* 175 B.R. at 924 ("[T]his omission is not compelling.... For all that appears, the draftsmen of Rule 1019(2) might well have concluded that the language of Rule 4003(b) was sufficiently clear to assure that the trustee could object to claims following the conclusion of the Chapter 7 creditors meeting after the case had been converted.").

There are other logical problems with the majority's reliance on the enumerated exceptions in 348(b) and (c). For example, section 1102(a) (calling for a meeting of creditors holding unsecured claims and allowing a meeting of equity security holders) is on the list in section 348(b), but does not contain the phrase "the order for relief under this Chapter." It does say that "[a]s soon as practicable after the order for relief under Chapter 11 of this title, the United States trustee shall appoint a committee of creditors...." Presumably (and notwithstanding inexact drafting), the inclusion of this section in 348(b) intends that a meeting of creditors be called as soon as practicable after conversion to Chapter 11. For cases converted to Chapter 7, the majority argues, there is to be no meeting because an analogous provision did not make the list.[4]

That in turn creates further problems. Section 701(a) is included among the enumerated provisions and provides, in those circumstances, that promptly after conversion the U.S. trustee shall appoint "an interim trustee." That is all well and good until one tries to replace the interim trustee in the converted case. Section 701(b)

provides that the services of the interim trustee conclude when the trustee duly elected under § 702 qualifies under § 322. Section 702, however, provides that the creditors may elect one person to serve as trustee at the meeting convened pursuant to § 341. And as the majority repeatedly insists, there is no § 341 meeting after conversion. The result under the majority's logic is that the interim trustee appointed in cases converted to Chapter 7 may not be replaced by one elected by the creditors. The term "interim" is now meaningless.

Or consider the application of the majority's rule to 11 U.S.C. § 303(g), which allows the court in an involuntary liquidation case to appoint an interim trustee to take possession of the debtor's property and to operate any business of the debtor pending trial on the involuntary petition. The provision is keyed to the first order of relief and is not included in the list of enumerated exceptions. It reads

At any time after the commencement of an involuntary case under Chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor. Before an order for relief, the debtor may regain possession of property in the possession of a trustee ordered appointed under this subsection if the debtor files such bond as the court requires, conditioned on the debtor's accounting for and delivering to the trustee, if there is an order for relief in the case, such property, or the value, as of

---

4. This goes against what some have called the "universal" position "that in a conversion situation a second section 341 hearing is mandated under Fed.R.Bankr.P. 2003." *In the Matter of Wolf,* 244 B.R. 754, 756 (Bankr. E.D.Mich.2000). One wonders, additionally, why Congress would provide for a second creditors meeting to address a reorganization plan, but not a liquidation of the estate.

the date the debtor regains possession, of such property.

11 U.S.C. § 303(g). Without the time period being reset by conversion, the court in a case involuntarily converted to Chapter 7 from Chapter 11 would not have the authority to preserve certain fragile assets.

From these few examples, it is clear that *expressio unius* is simply not a trustworthy guide through this tangle.[5]

### b. *Practicalities of the 11 to 7 conversion*

Thus, it becomes necessary to set aside the competing Code interpretations and focus on the crux of the dispute: what rights do the trustee and creditors have after learning that the estate will now be liquidated, and, more difficult, what is the status after conversion of property successfully exempted during an earlier phase of the bankruptcy case?

One commentator has concluded that the argument for a new objections period is strongest when the conversion is from Chapter 12 to Chapter 7 or from Chapter 13 to Chapter 7, because property acquired by the debtor post-petition now explicitly becomes property of the estate in the ongoing case pursuant to 11 U.S.C. § 1207(a)(1) and § 1306(a)(1). *See* Thomas Ray, *The Effects of Conversion to Chapter 7 on Selected Time Periods*, 14–May Am. Bankr.Inst. J. 16 (1995). Because there is no analogous augmentation provision for a case converted from Chapter 11, the commentator, like the majority, believes a post-conversion objections period is prohibited. The bankruptcy courts considering this result, however, point to the potential for abuse under such a regime because it would "encourag[e] debtors to increase their exemptions simply by filing Chapter 11 and converting to Chapter 7 after the 30–day period." *In re Havanec*, 175 B.R. at 924.

The abstract procedural debate comes sharply into focus when there is property successfully exempted during the first phase of the case and, after conversion, the trustee seeks the opportunity to object. The Bankruptcy Appellate Panel for the Eighth Circuit in *Alexander v. Jensen-Carter (In re Alexander)*, 239 B.R. 911 (8th Cir. BAP 1999), had no problem requiring a post-conversion meeting of creditors and a corresponding objections period in light of the fact that the Chapter 13 trustee had successfully objected to the same homestead exemption claim prior to conversion. The court gave no indication whether it would have allowed the second objection if the first had been unsuccessful or had there been no objection at all.

In the context of the more frequent 13 to 7 conversion, Congress has considered an analogous question to the one presented here. Two lines of thought had developed on the appropriate date for determining what would be considered property of the estate when a case is converted. Several circuits held that the filing date of the original petition should be the date for measuring the contents of the estate, *see*,

---

**5.** Without some indication that other provisions were considered for the list and rejected, we cannot be confident that "the expression of one is the exclusion of others." *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (rejecting application "expressio unius est exclusio alterius" and noting that such canons "long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose"); *SEC v. Joiner Corp.*, 320 U.S. 344, 350–351 & n. 8, 64 S.Ct. 120, 88 L.Ed. 88 (1943) (citing other cases "treat[ing] the maxim 'expressio unius est exclusio alteri-

us' as but an aid to construction"); *Ford v. United States*, 273 U.S. 593, 612, 47 S.Ct. 531, 71 L.Ed. 793 (1927) ("[The maxim] is often a valuable servant, but a dangerous master to follow in the construction of statutes or documents. The 'exclusio' is often the result of inadvertence or accident, and the maxim ought not to be applied, when its application ... leads to inconsistency or injustice."). The canon "rests on the assumption that all omissions in legislative drafting are deliberate, an assumption we know to be false." *Custis v. U.S.*, 511 U.S. 485, 501, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (Souter J., dissenting).

*e.g., In re Bobroff,* 766 F.2d 797 (3d Cir. 1985), while another held that the date of conversion would be used, *see In re Lybrook,* 951 F.2d 136 (7th Cir.1991). Congress resolved the split when it passed the Bankruptcy Reform Act on October 22, 1994, which specified that the converted estate consists only "of property of the estate, as of the date of filing of the petition, *that remains in the possession of or is under the control of the debtor on the date of conversion....*" 11 U.S.C. § 348(f)(1)(A) (emphasis added). Congress' purpose in enacting this section was to eliminate the disincentive that section 1306(a)(1) placed on a party that wanted to file under Chapter 13 but also wanted the option to convert to Chapter 7. *See* 140 Cong.Rec. H10752–01, at H10765, H10770, and H10772. Without the 1994 amendment, the converted Chapter 7 estate would include property acquired by the debtor after he filed the original Chapter 13 petition, even though the after-acquired property rule did not apply to cases originally filed under Chapter 7.

Under that section's second clause, however, property owned by the debtor at the time the petition is filed, even if previously listed as exempt, would be part of the converted estate, provided that it remains in the debtor's possession on the date of conversion. Congress reasonably chose to distinguish between after-acquired and exempt property in 13 to 7 cases, and the distinction makes just as much sense if the case begins under Chapter 11.[6] If the debtor chooses to alienate exempt property before conversion, so be it. But for the purpose of overseeing the liquidation of an estate once the case has been converted to Chapter 7, the trustee and creditors should have the opportunity to evaluate and object to previously claimed exemptions if the property remains in the debtor's possession.

---

6. The majority argues that the absence of a similar provision for cases converted from Chapter 11 confirms their position. If the Code and Rules were not ambiguous on the issue presented here, I might agree. But, as the above discussion indicates, there are a number of procedural holes to be filled in the context of 11 to 7 conversions and the best gap-fillers will come from Congress' explicit instructions on closely analogous problems.