**In re H. Keith HENSON, Debtor.**

**No. 98–51326–ASW.**

United States Bankruptcy Court,
N.D. California.

Oct. 23, 2003.

---

Stanley A. Zlotoff, Law Offices of Stanley A. Zlotoff, San Jose, CA, for Debtor.

Elaine M. Seid, McPharlin, Sprinkles & Thomas LLP, San Hose, CA, Samuel D. Rosen, New York City, Helena K. Kobrin, Moxon & Kobrin, Los Angeles, CA, for Creditor.

Judith S. Suelzle, Law Offices of Judith S. Suelzle, Cupertino, CA, for Carolyn Wu, Chapter 7 Trustee.

Nanette Dumas, San Hose, CA, for William T. Neary, United States Trustee, Edwina E. Dowell, Assistant United States Trustee.

## MEMORANDUM DECISION DENYING MOTION TO DISMISS CHAPTER 7 CASE

ARTHUR S. WEISSBRODT,
Bankruptcy Judge.

Before the Court is a motion to dismiss this bankruptcy case, filed by creditor Religious Technology Center ("Creditor").

The case was commenced by H. Keith Henson ("Debtor"), who filed a Chapter 13 [1] petition on February 28, 1998; the case was converted to Chapter 7 on February 7, 2003.

Creditor is represented by Elaine M. Seid, Esq. of McPharlin, Sprinkles & Thomas LLP; Samuel D. Rosen, Esq.; and Helena K. Kobrin, Esq. of Moxon & Kobrin. Debtor is represented by Stanley A. Zlotoff, Esq. ("Zlotoff"). Carolyn Wu, the Chapter 7 Trustee in the case, ("Trustee") is represented by Judith S. Suelzle, Esq. William T. Neary, United States Trustee, and Edwina E. Dowell, Assistant United States Trustee, (collectively, "U.S. Trustee") are represented by Nanette Dumas, Esq.

The matter has been briefed and argued, and submitted for decision. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure ("FRBP").

### I.

### FACTS

The facts are not in dispute.

Debtor appeared at the creditors' meeting held pursuant to § 341 in the Chapter 13 case in 1998. During the Chapter 13 case, Creditor conducted very extensive and protracted discovery concerning Debtor's assets, in connection with Creditor's objection to confirmation of Debtor's proposed Chapter 13 plan and a motion to dismiss the Chapter 13 case.

At some point in 2001, during the Chapter 13 case, Debtor left California to live in Canada, shortly prior to being sentenced on unrelated criminal charges in Riverside

---

1. Unless otherwise noted, all statutory references are to the Bankruptcy Code, Title 11 United States Codes, as it provided with respect to cases commenced on February 23, 1998.

County. Debtor stated in declarations filed in the Chapter 13 case that he had filed a petition for Canadian refugee status and could not leave that country while it was pending.

Creditor's motion to dismiss the Chapter 13 case was tried in 2002; Debtor did not appear at trial. This Court ruled that Debtor would not be permitted to remain in Chapter 13 and that, pursuant to § 1307(c), the interests of the bankruptcy estate and its creditors would be better served by conversion than by dismissal. An order converting the case to Chapter 7 was filed on February 7, 2003.

The Trustee was appointed in the Chapter 7 case and the Clerk of the Bankruptcy Court issued a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" ("Notice") on March 3, 2003. The Notice states that a "Meeting of Creditors" will be held on April 1, 2003, that Debtor "must be present at the meeting to be questioned under oath by the trustee and by creditors," and that Debtor must "provide government-issued photo identification and proof of social security number to the trustee at the meeting of creditors."

Debtor did not appear at the April 1 meeting. Zlotoff did appear, and asked for a continuance so that he could make arrangements for Debtor to appear by telephone; the Trustee continued the meeting to April 29, 2003. At the continued meeting, Debtor did not appear and the Trustee announced that Debtor's request to appear by telephone had been denied by the U.S. Trustee. The Trustee also stated that the meeting was concluded, but she then wrote to counsel for Debtor and Creditor on May 7, 2003 and said that she was changing the minutes to reflect that the meeting "has been taken off calender rather than concluded."

Creditor moved to dismiss the Chapter 7 case based on Debtor's failure to appear at the meeting. When that motion first came on for hearing June 5, 2003, counsel appeared for the Trustee and stated that her client did not oppose dismissal because Chapter 7 administrative expenses were likely to exceed any possible asset recovery, which would preclude distribution to creditors. The Trustee's attorney also said:

> . . . not being able to examine the debtor at a 341 particularly in the absence of a 1019 report of any sort would make administration of the estate more difficult, but I'm not sure that examination of the debtor given the history of this case is necessarily going to get us any closer to the truth of anything than we have under—through other documents executed under penalty of perjury.
>
> . . .
>
> The trustee's position is that it really isn't all that important to have the meeting of creditors that that's probably not going to make any difference, that the real reason for dismissing is that there really isn't anything thing here for creditors.[2]

Counsel appeared for the U.S. Trustee and stated that her client took no position regarding dismissal. Since then, the Trustee has moved to sell the principal asset of Debtor's estate, the residence Debtor shared with his wife, Arel Lucas, which is scheduled for hearing on October 23, 2003 and opposed by Creditor.

## II.

### ANALYSIS

■ Creditor's motion to dismiss the Chapter 7 case is based on Debtor's failure to appear at the initial or continued post-

---

**2.** In response, counsel for Debtor correctly pointed out that most Chapter 7 cases are "no asset" cases in which creditors receive no distribution.

conversion creditors' meeting. Creditor cites § 341, which provides (in pertinent part) as follows:

(a) Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

. . .

(d) Prior to the conclusion of the meeting of creditors or equity security holders, the trustee shall orally examine the debtor to ensure that the debtor in a case under chapter 7 of this title is aware of—(1) the potential consequences of seeking a discharge in bankruptcy, including the effects on credit history; (2) the debtor's ability to file a petition under a different chapter of this title; (3) the effect of receiving a discharge of debts under this title; and (4) the effect of reaffirming a debt, including the debtor's knowledge of the provisions of section 524(d) of this title.

Creditor also cites § 343, which provides in full as follows:

The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors, any indenture trustee, any trustee or examiner in the case, or the United States trustee may examine the debtor. The United States trustee may administer the oath required under this section.

█ Debtor argues that his appearance was not required after the case was converted from Chapter 13 to Chapter 7, citing *In re Smith,* 235 F.3d 472 (9th Cir. 2000) ("*Smith*") for the proposition that conversion from one chapter to another does not "reset" the date of the original order for relief under the Bankruptcy Code and, while conversion "triggers the Clerk's office to renotice a new date" for a creditors' meeting, that meeting is "technically" not a meeting pursuant to § 341, so a debtor has no duty to appear. Debtor also points out that the Notice issued post-conversion in this case does not describe the creditors' meeting as a "§ 341 meeting," and is not an order directing Debtor to appear. Holding aside for a moment Debtor's arguments regarding the substance of the Notice, this Court disagrees with Debtor's interpretation of *Smith.* In that case, a creditors' meeting under § 341 was commenced in a Chapter 11 case but never expressly concluded; rather, the trustee adjourned it indefinitely. Objections to exemption claims were filed many months after the indefinite adjournment, even though FRBP 4003 requires them to be filed within thirty days after conclusion of the § 341 meeting. Then, when the case later converted to Chapter 7, another creditors' meeting was held and the objections were renewed. The Ninth Circuit held that FRBP 2003 does not permit a § 341 meeting to be adjourned indefinitely as the trustee purported to do, and failure to announce a continued date within thirty days after the adjournment meant that the meeting was concluded on the date of adjournment; since objections to exemption had to be made within thirty days after conclusion, it followed that the objections made months after the adjournment (which was deemed a conclusion) were untimely. With respect to conversion, *Smith* states (at 477):

. . . we turn to consider the conversion issue: whether the conversion of Smith's bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation began a new thirty-day period for objections under Rule 4003(b). Rule 4003(b) allows as timely filed only those objections made "within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a)." See *In re Halbert,* 146 B.R. 185, 189 (Bankr. W.D.Tex.1992). Accordingly, for the Creditors' objections to be timely, conversion of the bankruptcy process from

Chapter 11 to Chapter 7 would have to restart the time period in which objections may be filed. [¶] Section 341 of the Bankruptcy Code requires the trustee to convene a meeting of creditors "[w]ithin a reasonable time after the order for relief in a case under this title." Certainly, the conversion of a case initially brought under Chapter 11 to a case under Chapter 7 constitutes an order for relief under the chapter to which the case is converted. However, conversion does not reset the date of the order for relief. 11 U.S.C. § 348(a). "The purpose of section 348 is to preserve actions already taken in the case before conversion.... To effect this purpose, section 348(a) establishes the general rule that, in a converted case, the dates of the filing, the commencement of the case and the order for relief remain unchanged by the conversion." *In re Bell*, 225 F.3d 203, 213 (2nd Cir.2000) (citations omitted). Except for certain specifically enumerated filing deadlines, see 11 U.S.C. § 348(b) and (c), § 348 "does not effect a change in the date of ... the order for relief." 11 U.S.C. § 348(a). [¶] Furthermore, Rule 1019(2), which "implements" § 348's provisions on conversion from Chapter 11 to Chapter 7, *In re Bell*, 225 F.3d at 209, specifies new time periods for a number of events, see Fed. R. Bankr.P. 1019(2) (resetting Rule 3002, 4004, and 4007 deadlines), but none for objections to exemptions pursuant to Rule 4003(b). See *In re Bell*, 225 F.3d at 209. Reading Rule 1019(2) in conjunction with § 348 compels the conclusion that § 348 generally requires the order for relief to remain unaltered by conversion from Chapter 11 to Chapter 7. To the extent that Rule 1019(2) resets any deadlines, it does so only for those exceptions expressly enumerated in section [sic] §§ 348(b) and (c). Neither § 341 nor § 702(b) (providing for the election of the Chapter 7 trustee "[a]t the meeting of creditors held under section 341") is among these enumerated exceptions. See *In re Bell*, 225 F.3d at 214.

Debtor interprets that discussion to mean that there need be no post-conversion meeting under § 341, such that the requirement of § 343 for a debtor's attendance at a meeting held under § 341 does not apply post-conversion. However, the reference to the date of the order for relief not being "reset" by conversion is *dicta* with respect to the issues of whether a new § 341 meeting is required post-conversion, and whether a debtor is required to appear at it. In *Smith*, the Ninth Circuit addressed the following issues:

> ... first, whether the indefinite "continuance" of a Bankruptcy Code § 341(a) "meeting of creditors" tolls the period for filing objections to property claimed as exempt under § 522(1); and second, whether conversion of the case from Chapter 11 to Chapter 7 triggers a new period within which to file objections to property already excluded as exempt during the Chapter 11 proceeding.

*Smith* at 473. On those issues, *Smith* holds that no new opportunity to object did arise, for the reasons explained—*Smith* does not hold that no new creditors' meeting need be held post-conversion, and that was not an issue in the case. Moreover, the fact that § 348 does not "reset" the date of the order for relief does not mean that FRBP 2003 and § 341 do not apply to a case that is converted to Chapter 7 from Chapter 13. The Rule provides that "the United State trustee shall call a meeting of creditors to be held no fewer than 20 and no more than 40 days after the order for relief"—the Code section provides that "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors"—since

§ 348(a) provides that a conversion order constitutes an order for relief under the new chapter, § 341 calls for a meeting of creditors to be held within a reasonable time post-conversion. In other words, there are two orders for relief in a converted case—the first occurs when the original petition is filed (*i.e.*, an order for relief under the chapter specified in the petition)—the second occurs when the conversion order is made (*i.e.* an order for relief under the new chapter)—see, *e.g., F & M Marquette National Bank v. Richards*, 780 F.2d 24 (8th Cir.1985). Accordingly, the Bankruptcy Code does require a § 341 meeting to be held after a case is converted from one chapter to another.

■ We turn next to Debtor's arguments with respect to the form of the Notice. The fact that the Notice issued by the Clerk's office is not an order directing Debtor to appear and does not cite § 341 in announcing the creditors' meeting does not mean that the meeting is not being held pursuant to § 341 and that Debtor is not required to attend it as provided by § 343—the law is created by the Bankruptcy Code, not by the Clerk's office and its notices.[3]

Creditor argues that the § 343 requirement for appearance at the creditors' meeting held pursuant to § 341 is mandatory and not subject to waiver, citing cases from other jurisdictions. However, those cases are not binding on this Court. The more enlightened view is that of *In re Bergeron*, 235 B.R. 641 (Bankr.N.D.Ca. 1999) (*"Bergeron"*), recognizing that bankruptcy courts have discretion in the matter. That case notes that, under Supreme Court and Ninth Circuit case law,

the plain language of § 343 must govern unless it would lead to results that do not comport with the intent of the drafters, or are absurd or impractical. The Bankruptcy Court in *Bergeron* found that, when all parts of the Bankruptcy Code concerning consumer debtors are read together, it would be absurd to construe the mandatory language of § 343 to mean that the Court lacks any discretion to excuse appearance, because § 109 concerning eligibility and § 727 concerning denial of discharge include no requirement of appearance at the § 341 meeting, which suggests that Congress did not intend to "strip the bankruptcy court of all discretion to excuse an individual debtor's appearance at a § 341 meeting, at least where such appearance would be impossible or utterly pointless." In that case, neither the trustee nor creditors desired to examine the debtor, and his wife testified that her husband was too ill to appear either personally or by telephone. It was undisputed that the 89 year old debtor suffered from blindness, senile dementia, renal failure, and prostatism requiring a catheter—a doctor's opinion stated that the debtor was unable to attend and, even if accommodations were made to permit attendance, he could not testify competently. The Court reasoned that:

> It would be ironic, indeed, for Congress to permit [the debtor] to seek chapter 7 relief and require that he be issued a discharge, but then to negate his ability to obtain that relief because he is physically and mentally unable to appear and be questioned under oath at the § 341

---

**3.** In any event, this Court's decision to allow the Debtor another opportunity to appear renders moot Debtor's arguments with respect to the adequacy of the Notice. The Court notes in this regard that, if the U.S. Trustee waited until, or close to, the date of the April 29, 2003 continued meeting to announce that it had denied Debtor's request to appear by telephone, then Debtor would not have known prior to then whether the U.S. Trustee would allow him to appear telephonically. This is another reason it would be fairer to allow the Debtor another opportunity to appear at a § 341 meeting.

meeting. It would be a particularly bitter irony in this case, since no one has expressed the slightest interest in interrogating him. I cannot imagine that Congress intended such an "absurd and impracticable" result.

In this case, the Court is not prepared to waive Debtor's appearance at the Meeting of Creditors. However, both the Bankruptcy Code and the FRBP are silent as to the manner in which such appearances must be made, *i.e.*, whether in person or by some alternative means such as telephone or video transmission. With respect to the latter alternative, modern technology offers a method of appearance that is fully equivalent to a personal appearance, in which demeanor can be observed as well as if the witness were present in the room. Indeed, while the U.S. Trustee notes that office's "general policy" to require personal appearance, it acknowledges that, in "rare" instances and "under extraordinary circumstances," that policy can be "relaxed" to accommodate those with "legitimate" circumstances precluding personal appearance, such as by permitting telephone appearance in cases of disability or hospitalization. Moreover, various kinds of non-personal appearances are provided for in other contexts, such as discovery and at trial, *see*, respectively, Rule 30(b)(2) of the Federal Rules of Civil Procedure ("FRCP") (incorporated by FRBP 7030) and FRCP 43(a) (incorporated by FRBP 9017)—indeed, many judges regularly conduct hearings or entire calendars by appearing telephonically or by video transmission. It makes no sense to say that, if someone is too sick to attend a creditors' meeting in another city or across town, but well enough to appear by telephone, he or she should be denied an opportunity to appear by some reasonable means (such as telephone or video), particularly if no one will be prejudiced by such method of appearance. Nor is it appropriate for courts to deny debtors who absolutely cannot appear in person the right to appear by such alternative means on moralistic grounds—this is highlighted by those cases which deny prisoners the right to appear by other means. First, people end up in prison for very short or longer periods of time and for all sorts of reasons with widely varying degrees of moral turpitude. It is not logical to deprive a prisoner (perhaps with minor children) of the opportunity to save a house with substantial equity from immediate foreclosure or to deny that person a discharge merely because he is in prison at the moment he needs protection. Second, and more importantly, if Congress had wanted to prevent prisoners from filing bankruptcy, it could have done so—since it did not, courts should not deny them access to bankruptcy protection solely because they are unable to appear personally at a § 341 meeting; incarceration is not among the grounds provided by § 727 for denial or revocation of discharge.[4]

Some persons might argue that the case at bench is less sympathetic than even a prisoner case because Debtor has presumably made a choice to flee the United States to avoid prosecution. But, if Congress had wanted to preclude such persons from filing bankruptcy, it could have done that on moral, or other policy and/or practical grounds. Where, as here, there may be no real reason why a telephone or video meeting should not suffice, under the particular facts of this case, the courts should

---

4. There is an extensive body of statutory and case law regarding denial of discharge and revocation of discharge. That body of law is applicable to Debtor's case. If Creditor or the U.S. Trustee had believed that Debtor was not entitled to a discharge, they could have filed a complaint under § 727 to deny him a discharge. They did not (Creditor filed a § 523 complaint) even after the case converted, which was long after he went to Canada.

not elevate the requirement that a debtor appear at a second § 341 meeting in a converted bankruptcy case into a moral issue. The issue is whether it is important to the particular case that the debtor appear physically rather than by telephone or video.

Further, and of equal importance, the Bankruptcy Code was enacted to help creditors as well as debtors, such as by providing for orderly and fair distribution of assets and avoiding a stampede to the courthouse. It may well be in the creditors' interest as well as in a debtor's interest for a given debtor to be in a Chapter 13 or 7 or 11 case, even though he or she may happen to be ill or in prison or a fugitive.[5] By taking a moralistic attitude toward a debtor's inability to appear (or if it is impractical and other alternative means are available), courts will end up punishing creditors as well as, or even more than debtors in many cases. For example, in a case where assets are available but the debtor does not appear at a mandatory creditors' meeting, dismissal frequently is completely inappropriate. Denial of discharge for failure to abide by court orders (if appropriate under the particular circumstances) would remain a possibility and would directly address the debtor's wrongdoing (if any) without harming creditors by depriving them of assets.

This Court is not prepared to insert a moralistic standard where Congress did not do so. As the Bankruptcy Court in *Bergeron* noted, neither eligibility to be a bankruptcy debtor nor entitlement to discharge is governed by § 343 requiring attendance at § 341 meetings—rather, they are governed by, respectively, § 109 and § 727, which include no such requirement. Courts should consider the manner of appearances at § 341 meetings in the same way they would the manner of any other appearance, assessing the available options and what is actually required under the circumstances. In this case, Debtor lives in Canada—it may be a appropriate to permit him to appear by telephone or video transmission rather than spending time and money to travel to San Jose, and that result is not necessarily altered by the particular circumstances under which he is located in Canada.

■ As a practical matter, little or no purpose may be served by conducting a post-conversion § 341 meeting in this case. Creditor argues that, although extensive discovery occurred in the Chapter 13 case, none has been conducted since Debtor moved to Canada in 2001, so there is no information about current assets and liabilities. However, Debtor correctly points out that the Chapter 7 estate consists of the assets that existed on the original petition date in 1998, and post-conversion income and expenses are irrelevant in Chapter 7. The Trustee considers that it "really isn't all that important to have the meeting of creditors" and it is "probably not going to make any difference." Three creditors (Dezotell, Hoden, and Wagoner) who have filed a complaint to except their claim from discharge under § 523 recently filed a pleading in connection with the pending sale of Debtor's real property stating that they would prefer examining Debtor at a § 341 meeting to using the Adversary Proceeding discovery rules under the FRBP, which may or may not be a legitimate position. No one else, including the U.S. Trustee, has expressed any interest in examining Debtor. Nevertheless, the plain language of § 343 does make appearance mandatory, and cases such as *Bergeron* have permitted waiver only in extreme situations that do not apply here. Accordingly, the Court will require Debtor to

---

**5.** Indeed, Debtors often move to dismiss their bankruptcy cases and are met with objections to dismissal by creditors, trustees, and/or the U.S. Trustee.

appear at a § 341 meeting, but the circumstances of the case may warrant permitting him to appear in some manner other than personally. Counsel for Debtor; the U.S. Trustee; the Trustee; Dezotell, Hoden, and Wagoner; and Creditor should meet and confer concerning the manner of appearance and who is to bear any associated expense—if they cannot agree, the disputed issues should be set for hearing.[6] In connection with any such hearing, all parties should address all possibilities, including practical issues (*e.g.*, regarding video transmission, relevant issues would include technical aspects and cost)—further, if the parties cannot agree, Creditor should provide a declaration of how much discovery it has already conducted in the case, including the number of hours devoted to depositions of Debtor and each witness (specifying the name and number of hours for each), and the number of interrogatories, requests for document production propounded to Debtor (and others), etc.

## CONCLUSION

For the reasons set forth above, Creditor's motion to dismiss the Chapter 7 case is denied, without prejudice. Counsel for Debtor shall submit a form of order so providing, following review as to form by counsel for the U.S. Trustee, the Trustee, and Creditor.

---

**6.** If any party takes the position that Debtor should only be permitted to appear in person, that party should also fully address the other possibilities—telephone, video transmission, or other method, even if such methods are unacceptable to that party. Debtor should also specifically research and address the possibility of appearing by video transmission as well as any other method.