In re: XO COMMUNICATIONS, INC., Debtor.

XO Communications, Inc., Debtor–Appellee,

Houlihan Lokey Howard & Zukin Capital, Appellant,

v.

High River Limited Partnership, Meadow Walk Limited Partnership, Appellees.

No. 07–2325–bk.

United States Court of Appeals, Second Circuit.

Oct. 15, 2008.

Michael E. Wiles, Debevoise & Plimpton LLP, New York, N.Y., for Appellant.

Andrew Dash, Brown Ruddick Berlack Israels LLP, New York, N.Y., for Appellees.

PRESENT: Hon. JON O. NEWMAN, Hon. JOSÈ A. CABRANES and Hon. ROGER J. MINER, Circuit Judges.

## SUMMARY ORDER

This appeal from the June 1, 2007, judgment of the District Court for the Southern District of New York (Barbara S. Jones, District Judge), *Houlihan Lokey Howard & Zukin Capital v. High River Ltd. Partnership,* 369 B.R. 111 (S.D.N.Y. 2007), affirming the March 9, 2005, decision of the Bankruptcy Court (Arthur J. Gonzalez, Bankruptcy Judge), *In re XO Communications Inc.,* 323 B.R. 330 (Bankr.S.D.N.Y.2005) (*"XO"*), challenges the adequacy of a fee of approximately $4 million awarded to Appellant Houlihan Lokey Howard & Zukin Capital ("Houlihan") for financial restructuring services to Appellee XO Communications, the debtor in a Chapter 11 reorganization. Houlihan had sought a fee of approximately $20 million. We assume the parties' familiarity with the facts and procedural history of this litigation.

We review the District Court's decision *de novo, see Bell v. Bell (In re Bell),* 225 F.3d 203, 209 (2d Cir.2000), which, in turn, reviewed the Bankruptcy Court's decision under a deferential standard to assure that the fee award was "reasonable." *See* 11

U.S.C. § 330(a)(3). Although the Appellees invite us to make a "bottom line" determination that the fee award is reasonable, and the Appellant contends that the fee is unreasonable in several respects, we encounter ambiguities in the Bankruptcy Court's opinion that preclude proper appellate review at this time. These arise primarily with respect to the Bankruptcy Court's decision to calculate the fee award by applying a rate of 40 basis points to the amount of the secured debt, making no explicit calculation with respect to the unsecured debt. The Bankruptcy Court at one point stated that "the Court concludes that Houlihan's restructuring services were necessary and beneficial with regard to the unsecured debt," *XO*, 323 B.R. at 342, but then stated that "the Court has already determined that Houlihan failed to demonstrate that its assistance regarding a restructuring of any of the unsecured debt was 'necessary' at the time such assistance was rendered." *Id.* at 344. Thus, it is unclear whether or not the Bankruptcy Court regarded restructuring services concerning the unsecured debt as necessary.

The Bankruptcy Court also stated that "any services rendered by Houlihan with the purported intent of restructuring the unsecured debt would not have had the same market value at the time such services were rendered as similar services may have had at the time of the commencement of Houlihan's retention under the Engagement Letter." *Id.* Even if the market value of the restructuring services rendered concerning the unsecured debt would not have been the "same" as at the time of Houlihan's retention, we are left unclear as to what diminished value those services had. We appreciate the Bankruptcy Court's point that the unsecured portion of the total debt " 'is so far out-of-the-money' that at best it would receive a distribution based more on nuisance value than on financial considerations." *Id.* But

we remain unclear, especially in light of the conflicting statements concerning the necessity of the services with respect to the unsecured debt, as to why the Bankruptcy Court totally disregarded the unsecured debt from the base on which to apply the rate of 40 basis points, a rate at the low end of what the Bankruptcy Court determined was an appropriate range.

Under all the circumstances, we conclude that the most appropriate course is to remand to the District Court so that it may, in turn, remand to the Bankruptcy Court for clarification. If the unsecured debt is to remain removed from the base on which the fee is calculated, there should be a reasoned explanation for such a conclusion. On the other hand, if the value of services rendered with respect to the unsecured debt is to be placed somewhat above zero but calculated by applying less than the 40 basis points applied to the secured debt, then the Bankruptcy Court should provide a reasoned explanation for its valuation. Or the Bankruptcy Court might conclude that whatever value is to be assigned to services rendered concerning the unsecured debt is not to be determined by the same methodology that was used for the secured debt, *i.e.,* applying an appropriate number of basis points to the amount of the debt, but instead is to be determined on some more generalized basis, consistent with the evidence. We intimate no view as to the outcome, nor do we require any particular form of analysis. We simply require clarification sufficient to permit appropriate appellate review. *See Mentor Insurance Co. (U.K.) Ltd. v. Brannkasse,* 996 F.2d 506, 520–21 (2d Cir. 1993).

Accordingly, the case is remanded to the District Court with directions to remand to the Bankruptcy Court for further proceedings consistent with this opinion. We urge both the District Court and the Bankrupt-

cy Court to proceed expeditiously. In the event of a further appeal to the District Court and a further appeal from the District Court to this Court, the jurisdiction of this Court may be restored by notice to the Clerk of this Court, filed within the time limit for filing a notice of appeal. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir.1994). In the event of such a further appeal to this Court, the case will be considered by this panel, without further oral argument, upon the submission of such supplemental papers as this Court may hereafter allow. The mandate shall issue forthwith.